UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| PAMELA A. LEEMAN, | ) | |
|---|---|---|
| | ) | |
| *Plaintiff* | ) | |
| v. | ) | Cause No. 3:14-CV-1777 RLM |
| | ) | |
| REGIONS INSURANCE, INC., | ) | |
| | ) | |
| *Defendant* | ) | |

OPINION AND ORDER

Pamela Leeman brought suit against her former employer, Regions Insurance, Inc., after she was terminated for refusing to sign an amendment to an employment agreements modifying the terms of compensation. In her third amended complaint, she seeks a declaration that two of the provisions in her original employment agreement are overly broad and unenforceable (Count 1) and asserts claims for breach of contract (Count 2), and employment discrimination under Title VII, the Age Discrimination in Employment Act, and the Equal Pay Act (Counts 3-8). Cross motions for summary judgment on Counts 1 and 2 [Doc. Nos. 34 and 53] currently pend before the court.[1] For the following reasons, Regions' motion is granted, and the plaintiff's motion is denied.

---

[1] A summary judgment motion also pends with respect to the claims asserted in Counts 3-8 [Doc. No. 58]. That motion will be addressed by separate order.

I. Background

Pamela Leeman worked as an insurance agent ("producer") for Regions and its predecessor, Miles & Finch, from 1996 until April 1, 2015, when she was terminated.

On December 18, 2006, Ms. Leeman entered into a Producer Employment Agreement with Miles & Finch, which, among other things, set the rates of compensation, provided that "changes in the time of payments, rate and terms of compensation may be made from time to time by mutual agreement", and included restrictions on the disclosure of confidential information, the solicitation of "any Customer that [Ms. Leeman] was wholly or partially responsible for managing, supervising, or servicing . . . at the time of [her] termination", and hiring or soliciting to hire "any other producers of Miles & Finch". Under the Agreement, if a client purchased insurance from Ms. Leeman, she received a portion of Miles & Finch's commission (or "revenue") – generally 35 percent on business she handled alone. Ms. Leeman co-managed accounts with another Miles & Finch producer, Brett Cain, and worked out an arrangement whereby she and Cain each received 25 percent of the revenue on their shared accounts (a 50 percent shared commission).

Regions purchased a portion of Miles & Finch's assets in early 2007, and continued the employment of several of Miles & Finch's producers, including Ms. Leeman. The producers' job responsibilities and compensation structure remained

the same, and Ms. Leeman and Mr. Cain were allowed to continue their split account arrangement.

In 2012, Regions began to make changes to the terms of compensation, reducing the rate of compensation on new co-managed property and casualty accounts from 25 percent to 17.5 percent. In 2014, it changed the compensation rate on accounts reassigned from departing producers from 35 percent to 20 percent, and reassigned all small accounts (accounts generating $1,500 or less in annual revenue) to its Small Accounts/RIG Select Unit.

In January 2015, Regions: (1) announced that it was going to reduce the rate of compensation on pre-existing co-managed accounts from 25 percent to 17.5 percent; (2) asked its producers to sign an "Amendment to Agreement" modifying the compensation and benefits provisions of the 2006 Producer Employment Agreement, effective January 1, 2015 [Doc. No. 26-2]; and (3) notified the producers that anyone who didn't sign the Amendment by March 31, 2015 would be terminated. The Amendment deleted paragraph 1 and Exhibit A (the Producer Compensation schedule) of the 2006 Producer Employment Agreement, and replaced it with a new "Compensation, Benefits and Expenses" provision that set the rates of compensation for all new, renewal, and assigned business beginning January 1, 2015, and provided that: "All commissions and fees are subject to adjustments for…commission sharing arrangements when other insurance producers or licensed insurance associates assist the Producer in obtaining new, renewal and/or assigned business…" (Amendment ¶ 1(a)(i) and (ii)).

After producers complained, Regions "reversed" the rate change for pre-existing co-managed accounts, and retroactively credited any lost compensation to the producers' accounts, including Ms. Leeman's. When Ms. Leeman and another producer, Chris Williamson, refused to sign the Amendment, Regions terminated their employment.

Ms. Leeman brought suit against Regions, alleging, among other things that:

(1) The confidentiality and "restrictions after termination" provisions in her 2006 Producer Employment Agreement (¶¶ 4 and 5) are overly broad and unenforceable and seeks declaratory relief to that effect (Count 1); and

(2) Regions breached the Employment Agreement by:

(a) unilaterally changing the rates of compensation on co-managed accounts in June 2012 and January 2015,

(b) unilaterally changing the compensation rate on accounts reassigned from departing producers, and

(c) reassigning small accounts (accounts generating $1,500 or less in annual revenue) to Region's Small Business Unit in July 2014. (Count 2). [Doc. No. 26].

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the record demonstrates that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

4

322 (1986); Protective Life Ins. Co. v. Hansen, 632 F.3d 388, 392 (7th Cir. 2011). The court construes the evidence, and all inferences that reasonably can be drawn from the evidence, in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The moving party bears the burden of informing the court of the basis for its motion and identifying the parts of the record that demonstrate the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. at 323. It can meet that burden by showing that there's no evidence to support the non-moving party's case. *Id*. at 325. Once the moving party has met its burden, the opposing party can't rest upon the allegations in the pleadings, but must "point to evidence that can be put in an admissible form at trial, and that, if believed by the fact-finder, could support judgment in his favor." Marr v. Bank of America, N.A., 662 F.3d 963, 966 (7th Cir. 2011); *see also* Hastings Mut. Ins. Co. v. LaFollette, No. 1:07-cv-1085, 2009 WL 348769, at *2 (S.D. Ind. Feb. 6, 2009)( "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies."); Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005)(quoting Hammel v. Eau Galle Cheese Factory, No. 02-C-0405-C, 2003 WL 21665133, at *7 (W.D. Wis. June 26, 2003) ("Summary judgment is not a dress rehearsal or practice run; it 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'").

5

III. Discussion

Pursuant to paragraph 12 of the Employment Agreement, "[The] Agreement shall be interpreted and enforced in accordance with the laws of the State of Indiana." The parties agree that whether the provisions in question (¶¶ 4 and 5) are reasonable and enforceable is a question of law for the court to decide. *See* Bodemer v. Swanel Beverage, Inc., 884 F.Supp.2d 717, 730 (N.D. Ind. 2012); Licocci v. Cardinal Assocs., Inc., 445 N.E.2d 556, 561 (Ind. 1983). They also agree that there are no genuine issues of fact precluding the entry of judgment on either the declaratory judgment or the breach of contract claim.

A. *The Confidentiality and Restrictions Provisions (Count 1)*

Paragraphs 4 and 5 of the 2006 Employment Agreement provide in relevant part as follows:

> 4. **Confidentiality**. In exchange, and as consideration, for Producer's promises contained in this Agreement, Miles & Finch promises that, immediately upon the execution of the Agreement, Producer shall be provided access to Miles & Finch's Confidential Information.
> (a) Producer agrees that Miles & Finch has a legitimate business interest in its Confidential Information. Producer acknowledges that the insurance business is highly competitive; that profitability depends, in large part, upon repeat business; that knowledge of an agency's customers' identities, needs, policy expiration dates, and related data is a valuable competitive tool which can be used by a competitor to that agency's substantial detriment; and that Producer will acquire such knowledge from Miles & Finch in the course of Producer's employment. As such, the Parties agree that

6

Miles & Finch is entitled to prevent the disclosure of its Confidential Information.

(b) For purposes of this Agreement, the Parties acknowledge and agree that "Confidential Information" means Miles & Finch's *proprietary information that is not generally available to the public* (unless such information has become available to the public through fault of Producer). Confidential Information includes, but is not limited to: (1) Miles & Finch's proprietary databases and information; (2) Miles & Finch's methods of operation, marketing strategies, and promotional materials; (3) Miles & Finch's contact and referral identity information; (4) Miles & Finch's carriers', customers', *and potential customers'* identities, needs, prices, services, and policy expiration dates; (5) documented proprietary systems and procedures; (6) logistical information and strategy implementation methodologies; (7) training provided to Producer by Miles & Finch in the techniques and methods of the sale of insurance; (8) research reports and internal documentation prepared by Miles & Finch; and (9) all other files, instruments, documents, papers and other materials used in connection with Miles & Finch's business….

5. **<u>Restrictions After Termination</u>**. Producer agrees that during his or her employment and for a period of two (2) years following termination of his or her employment…he or she will not, for any reason:

(a) either directly or indirectly…(i) solicit, divert, accept, service or assist in the solicitation or acceptance of, any insurance business from any Customer that Producer was wholly or partially responsible for managing, supervising, or servicing for Miles & Finch at the time of such termination; or (ii) hire or solicit to hire any other producers of Miles & Finch to work for Producer or to work for any other agent, broker or insurer. For purposes of this Agreement, a "Customer" is defined to include those organizations, individuals, groups, companies, or other entities for whom the Producer, at the time of termination, is selling, servicing, managing or consulting regarding insurance products, or for whom Producer has sold, serviced, managed, or consulted regarding insurance products of insurance claims in the twelve-month period prior to termination of employment. For purposes of this Agreement, "other producers" are those producers of independent contractors who are still actively employed by, or doing business with Miles & Finch at the time of the attempted recruiting or hiring.

(b) disclose to any person, firm, partnership, association, corporation or organization engaged in the insurance business the

name and address of any organization or person associated with a Customer that Producer was wholly or partially responsible for managing, supervising, or servicing for Miles & Finch at the time of termination;

(c) reveal to any person, firm, partnership, association, corporation or organization engaged in the insurance business any information or data relating to any Customer that Producer was wholly or partially responsible for managing, supervising, or servicing at the time of termination of his or her employment, including, but not limited to, the content or expiration date of any insurance policy or agreement.

(d) directly or indirectly solicit or assist others in soliciting any employee of Miles & Finch, or its affiliates, to terminate his or her employment.

(e) The restrictions set forth in this Paragraph 5 shall expire the last day of the restrictive period described in the first sentence of this Paragraph 5. In addition, Producer irrevocably agrees that, for two years following termination of his or her employment, Producer will notify Miles & Finch of any new employment undertaken by Producer that involves the insurance business and would be likely to compete with Miles & Finch.

Ms. Leeman seeks an order under the Declaratory Judgment Act invalidating those provisions. She contends that:

(1) the provisions (together or separately) should be treated as "covenants not to compete";

(2) Paragraphs 4 and 5 are unreasonable and unenforceable because they don't contain geographic and/or temporal limitations, "irreparably harm[] the interest of the general public", and make it "impossible for [her] to hold any position in the insurance industry";

(3) Paragraph 4 is also invalid because it applies to "potential" customers (¶ 4(b)(4)) and precludes her from using "any confidential information from now until perpetuity anyplace in the world," *Citing*

8

Bodemer v. Swanel Beverage, Inc., 884 F.Supp.2d 717 (N.D. Ind. 2012); Vukovich v. Coleman, 789 N.E.2d 520, 526 (Ind. App. 2003); Stuever v. Monitor Coach Co., 294 N.E.2d 654 (Ind. 1973); and

(4) Regions breached the 2006 Agreement when it unilaterally changed the rates of compensation on co-managed and reassigned accounts and reassigned all small accounts to Region's Small Business/RIG Select Unit, so it can't enforce the covenants not to compete. *Citing* Fisher v. Heymann, 12 N.E.3d 867, 872-73 (Ind. 2014).[2]

Regions contends that: the confidentiality provision doesn't require a geographic or temporal limitation, because it didn't prohibit Ms. Leeman from working or competing with Regions; the non-solicitation provision in paragraph 5 contains reasonable time limitations, and that customer restrictions, like the one in paragraph 5, can substitute for a geographic limitation in a restrictive covenant; the restrictions in paragraph 5 aren't contrary to public interest; and both provisions (¶¶ 4 and 5) are reasonable and narrowly tailored to protect Regions' legitimate interest in its customer contact information, customer requirements, pricing information, and relationships with customers, and

---

[2] Ms. Leeman also cites in support Fisher v. Heymann, 994 N.E.2d 1151, 1160-62 (Ind. App. 2013), but that opinion was vacated by Fisher v. Heymann, 12 N.E.3d 867 (Ind. 2014). The Indiana Supreme Court held in *Fisher*, that: "Just as breaching parties may not take advantage of their breach to relieve them of their contractual duties [cites omitted], neither may they take advantage of their breach to require non-breaching parties to perform beyond their contractual duties." 12 N.E.3d at 872.

9

confidential and proprietary information (marketing policies, advertising programs, pricing strategies, customer lists and sales data). The court agrees.

Confidentiality agreements, unlike non-solicitation or non-compete agreements, don't require a geographic or temporal limitation, if they don't prohibit a former employee from working or competing with his or her former employer. *Citing* Bodemer v. Swanel Beverage, Inc., 884 F.Supp.2d 717, 729 n. 12 and 734 (N.D. Ind. 2012). Neither provision prevents Ms. Leeman from: soliciting clients for whom she didn't manage or provide services in the year before her termination, working for a competitor, or working in the insurance industry, as shown by her having she quickly found another job in the industry. The Confidentiality provision (¶ 4) only prevents Ms. Leeman from using confidential and proprietary information "that is not generally available to the public" for her own benefit and Regions' detriment – primarily highly confidential information regarding customers. So too, the "Restrictions After Termination"/non-solicitation provision only prevents her from soliciting Regions' "Customers"– which the Agreement defines as "organizations, individuals, groups, companies, or other entities for whom [she] has sold, serviced, managed, or consulted regarding insurance products or insurance claims in the twelve-month period prior to termination of employment." (*See* ¶ 5(a)).

The non-solicitation ("restraint on trade") provision in paragraph 5 contains reasonable time limitations, Seach v. Richards, Dieterle & Co., 439 N.E.2d 208 (Ind. App. 1982) (two year limitation is reasonable), and customer restrictions, like

the one in paragraph 5, can substitute for a geographic limitation in a restrictive covenant. *See* Product Action Int'l, Inc. v. Mero, 277 F.Supp.2d 919, 925 (S.D. Ind. 2003); Seach v. Richards, Dieterle & Co., 439 N.E.2d 208, 213 (Ind. App. 1982); Norlund v. Faust, 675 N.E.2d 1142, 1155 (Ind. App. 1997) ("The use of territorial boundaries is only one method of limiting a covenant's scope, and when a covenant not to compete contains a restraint which clearly defines a class of persons with whom contact is prohibited, the need for a geographical restraint is decreased."). The non-solicitation restriction in paragraph 5 clearly identifies the class of persons with whom contact is prohibits – "Customers" that Ms. Leeman was "wholly or partially responsible for managing, supervising or servicing" in the "twelve-month period prior to [her] termination" – and Ms. Leeman acknowledged during her deposition that most of her customers were located in Kokomo and Logansport. Indiana courts routinely enforce similar non-solicitation provisions. *See* Cohoon v. Financial Plans & Strategies, Inc., 760 N.E.2d 190, 195-96 (Ind. App. 2001); Norlund v. Faust, 675 N.E.2d 1142, 1155 (Ind. App. 1997); Field v. Alexander & Alexander of Indiana, Inc., 503 N.E.2d 627, 635-636 (Ind. App. 1987); Seach v. Richards, Dieterle & Co., 439 N.E.2d 208, 214-215 (Ind. App. 1982).

Restrictions such as those in paragraph 5 are valid and enforceable, if "the restraint is [1] reasonably necessary to protect the employer, [2] is not unreasonably restrictive of the employee, and [3] is not against public policy."

Harvest Ins. Agency, Inc. v. Inter-Ocean Ins. Co., 492 N.E.2d 686, 688-689 (Ind. 1986).

Ms. Leeman hasn't shown that the "Restrictions After Termination" are unreasonable, legally unenforceable, or against any public policy. Neither the confidentiality provision nor the non-solicitation provision prevents her from working in the industry, and both are reasonable and narrowly tailored to protect Regions' legitimate interest in its goodwill and confidential and proprietary information. *See* Coffman v. Olson & Co., P.C., 906 N.E.2d 201 (Ind. App. 2009); Press-A-Dent, Inc. v. Weigel, 849 N.E.2d 661 (Ind. App. 2006); McGlothen v. Heritage Environmental Svcs, LLC, 705 N.E.2d 1069 (Ind. App. 1999); Licocci v. Cardinal Assocs., Inc., 445 N.E.2d 556, 561 (Ind. 1983) ("advantageous familiarity and personal contact which employees derive from dealing with an employer's customers are elements of an employer's 'goodwill' and a protectable interest which may justify a restraint."); Commercial Bankers Life Ins. Co. v. Smith, 516 N.D.2d 110, 112 (Ind. App. 1987) ("[A]n employer can 'validly contract' to prevent an employee representative from using [an employee's] relationship [with clients] for h[er] own benefit or for the benefit of a competitor."). Even if the provisions were over-reaching and invalid, the Agreement contains a severability provision (¶ 11). Regions is therefore entitled to judgment in its favor on Count 1.

B. *Breach of Contract (Count 2)*

Ms. Leeman contends that Regions breached the 2006 Agreement by unilaterally changing the rates of compensation on co-managed accounts in June 2012 and January 2015. unilaterally changing the compensation rate on accounts reassigned from departing producers in June 2014, and reassigning small accounts (accounts generating $1,500 or less in annual revenue) to Region's Small Business/RIG Select Unit in July 2014.

In response and support of its summary judgment motion, Regions argues that:

(1) The June 2012 rate change was an "implied modification." Contract modifications can be implied from the conduct of the parties, *see* Stamm v. TigerTech Investments, Inc., No. 1:11cv1686, 2013 WL 1093033 (S.D. Ind. Mar. 15, 2013); Gilliana v. Paniaguas, 708 N.E.2d 895, 897 (Ind. App. 1999); City of Indianapolis v. Twin Lakes Enterprises, Inc., 568 N.E.2d 1073, 1084-85 (Ind. App. 1991), and Ms. Leeman effectively consented to the modification when she continued to work for Regions for almost three years after the change and to accept payments at the reduced rate.

(2) The 2006 Agreement doesn't contain any provision about compensation for accounts reassigned from departing producers, so Regions could modify that rate at any time, even if the producers didn't agree.

(3) Regions reserved the right to reassign accounts in paragraph 7 of the Agreement, and exercised that right in July 2014, when it reassigned all small accounts to the Small Business/RIG Select Unit.

(4) The rate change proposed for pre-existing co-managed accounts in January 2015 was "reversed" after the producers complained, and producers' accounts (including Ms. Leeman's) were retroactively credited for any lost compensation, so Ms. Leeman didn't suffer any damage as a result of the alleged breach.

(5) Ms. Leeman was an employee at will, so Regions had the right to terminate her employment with or without cause when she didn't agree to the new compensation rates and refused to sign the Amendment.

Ms. Leeman didn't respond to Regions' motion and doesn't dispute that the 2006 Agreement doesn't contain any provision about compensation for accounts reassigned from departing producers, that contract modifications can be implied from the conduct of the parties, *see* Stamm v. TigerTech Investments, Inc., No. 1:11cv1686, 2013 WL 1093033 (S.D. Ind. Mar. 15, 2013); Gilliana v. Paniaguas, 708 N.E.2d 895, 897 (Ind. App. 1999); City of Indianapolis v. Twin Lakes Enterprises, Inc., 568 N.E.2d 1073, 1084-1085 (Ind. App. 1991), or that she impliedly consented to the 2012 modification when she continued to work for Regions after the change occurred and to accept payments at the reduced rate. She hasn't shown that she's entitled to judgment as a matter of right on her breach of contract claim, or that she was damaged when Regions changed the compensation rate for pre-existing co-managed accounts in 2015.

Accordingly, Regions is entitled to judgment as a matter of law on Count 2.

IV. CONCLUSION

For the foregoing reasons, Ms. Leeman's motion for summary judgment on Counts 1 and 2 [Doc. No. 34] is DENIED, and Regions' motion for summary judgment on Counts 1 and 2 [Doc. No. 53] is GRANTED. The summary judgment motion directed at counts 3-8 will be addressed separately.

SO ORDERED.

ENTERED:  March 31, 2017

/s/Robert L. Miller, Jr.
Judge, United States District Court